ANTONIO DiLORENZO & another *vs.* THE ATLANTIC
NATIONAL BANK OF BOSTON.

Suffolk.   October 9, 1931. — March 1, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Practice, Civil,* Appellate division: construction of report; Finding by
judge; Requests, rulings and instructions. *Estoppel. Agency,* Ratifi-
cation. *Forgery. Conversion.*

If, at the hearing of an action in a municipal court the plaintiffs make a
request for a ruling of law which, after stating a proposition correct in
substance and applicable to the facts in evidence, concludes with a
statement, "and hence the plaintiffs are entitled to recover," and the
judge grants the request but finds for the defendant, the plaintiffs have
no right to complain of the granting of their request, and their proper
course to correct the apparent inconsistency between the granting of
the last eight words of the ruling and the finding for the defendant is to
move for a correction of the record.
The request above described was filed at a hearing on March 25, and the
finding for the defendant was filed on May 3. Thereafter a report to
the Appellate Division was prepared by the plaintiff and was allowed
by the judge. *Held,* that
    (1) The finding was the determinative action by the judge;
    (2) Rightly construed, the record presented no inconsistency: the
judge adopted the pertinent ruling of law for his guidance, but ignored
the conclusion in the last eight words of the request and made the
finding for the defendant on all the evidence and applicable rules of law.
No error is shown in the denial, at the hearing of an action in a municipal
court, of a request for a ruling which relates to a particular part of the
evidence, not in itself decisive of the case; or of a request involving a
finding of fact as well as a ruling of law; or of a request for a ruling
inapplicable to facts found by the judge.
A forged instrument may be ratified.
At the hearing in a municipal court of an action of tort against a bank in
Boston for conversion of funds deposited in Italy, there was evidence
that the plaintiff in December, 1924, delivered his deposit book to an
agent to be sent to Italy to have interest added and the book returned;
that the agent forged the plaintiff's name to a power of attorney and on

January 20, 1925, sold the book and deposit to the defendant and converted the proceeds; that "some . . . months" thereafter the plaintiff had notice of the agent's conduct; that the agent asked of the plaintiff time in which to make good his loss; that the plaintiff made no answer to such request but made no move civilly or criminally against the agent; that between the time of his discovery of the forgery and the time of the trial of the action in March, 1930, the plaintiff saw the agent several hundred times with regard to the bank book; and that the defendant did not receive notice of the forgery until December, 1929. The action was begun January 14, 1930. There was a finding for the defendant. *Held,* that, while the evidence did not warrant a conclusion that the plaintiff was estopped to assert his claim against the defendant, it warranted an inference and conclusion that the plaintiff had ratified the acts of his agent; and the finding for the defendant was warranted.

CONTRACT OR TORT.   Writ in the Municipal Court of the City of Boston dated January 14, 1930.

In the Municipal Court, the action was heard by *Murray,* J.   Material evidence, requests by the plaintiffs for rulings and action by the judge thereon are described in the opinion. There was a finding for the defendant.   The action was reported to the Appellate Division and the report was ordered dismissed.   The plaintiffs appealed.

*P. A. Delmonico,* for the plaintiffs.

*J. H. Dooley,* for the defendant.

RUGG, C.J.   This is an action in contract for money had and received, or in tort for conversion.   Undisputed facts are that the plaintiffs owned certain bank books representing funds deposited in the Italian Postal Savings System in Rome, Italy.   These books on December 18, 1924, were handed to one Del Buono, as had been done before, to be sent by him to Italy to have the interest added and the books returned to the plaintiffs.   Del Buono, being in financial difficulties, forged the names of the plaintiffs to as many powers of attorney as there were bank books and sold the bank books to the defendant on January 20, 1925, and used the substantial proceeds of that sale for his own purposes.   The defendant collected the amounts due on these bank books for its own account on the assumption that the powers of attorney were genuine.   There was evidence tending to show that "some few months after Janu-

ary 20, 1925," the plaintiffs had notice that the defendant purchased.the bank books and that about two months after that date Del Buono admitted to the plaintiffs that "he had taken the money and had no money left," and "asked of the plaintiffs time in which to make good their loss," and that the plaintiffs made no answer to this request but made no move against Del Buono, either civilly or criminally. During the period intervening between the time when the plaintiffs learned of the forgeries by Del Buono and the time of the trial, they saw him several hundred times with regard to the bank books and the return of the money, and at these interviews he told them of his forgeries. Del Buono, since December, 1924, has paid to other of his defrauded creditors $11,000, but there was no evidence that he had paid the plaintiffs anything. The plaintiffs consulted the Italian consul concerning their loss, wrote to the Italian bank, and retained an attorney. An officer of the defendant testified that he purchased the books from Del Buono. There was evidence that this officer "did not check up to ascertain the genuineness" of the signatures of the plaintiffs, but there was no evidence that it was not done by some other employee of the defendant. It was not disputed by the parties that the first notice of the forgeries of Del Buono was given to the defendant in December, 1929, by the attorney for the plaintiffs.

The trial judge made a general finding for the defendant. The plaintiffs presented several "requests for rulings." The questions of law argued relate to these requests.

The second request was in these words: "That Pasquale Del Buono to whom the plaintiffs entrusted the savings bank books, and the person who subsequently forged the plaintiffs' names to the powers of attorney could give The Atlantic National Bank of Boston no better title than he himself had and hence the plaintiffs are entitled to recover." This request was "allowed." As matter of strict and technical construction, the granting of this request as an entirety was inconsistent with the general finding for the defendant. The request was made by the plaintiffs and they have no right to complain that it was granted. If,

after the general finding for the defendant was made, they thought there was an incompatibility to be corrected, their proper course was to file a motion for its correction. *McManus* v. *Thing*, 202 Mass. 11, 16; *S. C.* 208 Mass. 55, 60. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 390. But we think that, rightly construed as a whole, the record although somewhat confusing presents no inconsistency. As shown by the docket entries, the trial occurred and the requests were presented on March 25, 1930, and the finding for the defendant was made on May 3, 1930. It is manifest that the finding for the defendant, followed some days later by the allowance of the report (which under the rules of the court must have been prepared and filed by counsel for the plaintiffs), was the dominant and final action of the trial judge. There can have been no mistake about that. The main part of the second request presented an important ruling of law pertinent to the evidence. The judge adopted it for his guidance. The last eight words of that request constituted what was doubtless thought by the one who presented it to state a necessary conclusion from the main body of the request. The finding for the defendant demonstrates that that conclusion was not adopted by the trial judge. The record rightly interpreted means that the last eight words of request 2 were ignored by the trial judge, the rest of the request was given as a ruling of law, and the general finding was intentionally and intelligently made for the defendant on all the evidence and applicable rules of law.

The third request was to the effect that the conduct of the defendant in collecting the amounts due on the bank books constituted the exercise of dominion over them and rendered the defendant liable in conversion. That request relates to a particular part of the evidence, not in itself decisive of the case, on which the judge could not be required to make a ruling. *Ayers* v. *Ratshesky*, 213 Mass. 589, 593. *Neelon* v. *Hirsh & Renner, Inc.* 255 Mass. 285, 290. *Buckley* v. *Frankel*, 262 Mass. 13, 16.

The fourth request, to the effect that the plaintiffs acted promptly after having discovered the conduct of the defend-

ant, involved a finding of fact as well as a ruling of law. That finding the judge was not required to make on all the evidence. *Adams* v. *Dick*, 226 Mass. 46, 57.

The fifth request was rightly denied because stated to be inapplicable to the facts found. *McLauthlin* v. *Wilder*, 138 Mass. 393, 397. *Holton* v. *Denaro, ante*, 261.

There is left for consideration request 1, to the effect that on all the evidence the plaintiffs were entitled to recover. The point has not been taken that this request was not in conformity to Rule 35 of the Municipal Court of the City of Boston (1928). *Holton* v. *American Pastry Products Corp.* 274 Mass. 268. *Duralith Corp.* v. *Leonard*, 274 Mass. 397. Therefore, the request is considered on its merits, as it was in the Appellate Division and as it has been presented by the parties.

The record contains no evidence whereby the plaintiffs are estopped from enforcing their claim against the defendant. The underlying conception, on which rests the doctrine of estoppel, is that one has been induced, to his harm, by the words, actions, or silence when there is a duty to speak, of another to do something which he would not otherwise have done, or to refrain from doing something which he otherwise would have done, and that the other person knew or had reasonable cause to know that such consequences might ensue from his conduct. "Without showing some injury by reason of the delay, the defendant cannot use it as an estoppel against the plaintiff." *Murphy* v. *Metropolitan National Bank*, 191 Mass. 159, 165. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. In the case at bar the defendant rested at the close of the plaintiffs' case, and there is no evidence of injury sustained by the defendant by reason of the delay of the plaintiffs in advising it of the forgery committed by their agent.

The question to be decided on this branch of the case is whether the finding for the defendant can be supported on the ground that by their conduct the plaintiffs could have been found to have ratified the acts of Del Buono, so as now to be precluded from pursuing their rights against the defendant. A forged instrument may be ratified. *Wellington*

v. *Jackson,* 121 Mass. 157, 159. *Central National Bank* v. *Copp,* 184 Mass. 328. Del Buono was agent for the plaintiffs, authorized in their behalf to transmit the bank books to the bank in Italy with the request that the accrued interest be added to them, and to return them to the plaintiffs. He abused his agency, but he was not a mere intermeddler. The forgeries by Del Buono were not authorized by the plaintiffs. There was no evidence of express approval by them of this unauthorized act of their agent. It must be assumed that the trial judge, in making a finding in favor of the defendant, found every fact and drew all inferences conducing to that result of which the evidence was reasonably susceptible. It might have been found on the evidence that the plaintiffs learned of the forgery by Del Buono, their agent, within a few months after it occurred, that is to say, they learned of it early in 1925; thereafter they saw their agent with regard to the bank books or to urge him to make restitution to them of the money "several hundred times" covering a period of almost, if not quite, five years. They knew, or had every reason to believe, that the defendant had acted upon the assumption that the forged powers of attorney were genuine instruments and transferred to it title to the bank books, and that it had paid money to Del Buono on that theory. The plaintiffs waited almost five years before giving notice to the defendant of the perfidy of their agent, or attempting to recover from it the money received by him for their bank books on the powers of attorney forged by him. In the meantime, they were constantly active in efforts to secure from their agent restitution for the wrong done by him.

The precise question is whether it might reasonably have been inferred from all these facts and circumstances that the plaintiffs had assented to the wrongful act of their agent. Their conduct respecting the defendant is significant. Toward it through all this time they maintained silence and inaction. As reasonable persons they ought to have known that it might be important to the defendant, if it was to be held liable for the loss occasioned by the forgeries, to know of the loss sustained by the plaintiffs and the identity of the culprit, to the end that it might take measures to procure

reparation or repayment of the money it had paid out in reliance on those forgeries. There may have been reasons of sentiment, or friendship, or business, inducing the plaintiffs to desire or to prefer that knowledge of all the facts should not reach the defendant soon after the loss. The drawing of appropriate and warrantable inferences was within the function of the trial judge. We are of opinion that, from all the facts shown on the record, an impartial and reasonable tribunal might have drawn the inference of ratification by the plaintiffs of the act of Del Buono, and that therefore they cannot maintain this action. This conclusion finds support in principle in our own decisions. *Foster* v. *Rockwell,* 104 Mass. 167, 172. *Metcalf* v. *Williams,* 144 Mass. 452, 454. *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 330–331. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 68. *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361, 368–369. It is supported by well considered decisions in other jurisdictions. *Philadelphia, Wilmington & Baltimore Railroad* v. *Cowell,* 28 Penn. St. 329. *Lynch* v. *Smyth,* 25 Col. 103, 111–112. *Alexander* v. *Jones,* 64 Iowa, 207, 211–212. *Heyn* v. *O'Hagen,* 60 Mich. 150, 157. *Saveland* v. *Green,* 40 Wis. 431, 438–439. *Uniontown Grocery Co.* v. *Dawson,* 68 W. Va. 332, 338.

*Order dismissing report affirmed.*