Cheryl **BOURASSA**, Administratrix of the Estate of Randolph Hamlett, Plaintiff,

v.

Clarence **LaFORTUNE**, M.D. and Elizabeth **Gleasure**, C.R.N.A., Defendants.

Civ. A. No. 87–2313–H.

United States District Court, D. Massachusetts.

April 5, 1989.

---

Elizabeth N. Mulvey, Andrew C. Meyer, Jr., Lubin & Meyer, Boston, Mass., for plaintiff.

Bruce R. Henry, Edward T. Crossen, Morrison, Mahoney & Miller, Boston, Mass., for defendants.

Susan H. Williams, Taylor, Anderson & Travers, Boston, Mass., for Clarence La-Fortune, M.D.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This wrongful death action is before the Court on the defendants Clarence LaFortune, M.D. ("LaFortune") and Elizabeth Gleasure's, C.R.N.A.[1] ("Gleasure") motion for summary judgment pursuant to Fed.R. Civ.P. 56. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332 and this Court applies Massachusetts substantive law.

The plaintiff Cheryl Bourassa,[2] in her capacity as Administratrix of the Estate of Randolph Hamlett ("Hamlett"), alleges that the defendants negligently administered anesthesia to the decedent Hamlett thereby causing him to suffer severe lack

---

1. C.R.N.A. is the abbreviation for certified registered nurse anesthetist.

2. Cheryl Bourassa is the daughter of the decedent.

of oxygen and resultant fatal cardiac arrest.[3]

Mr. Hamlett died on July 22, 1981 and this action was filed on November 17, 1987. Defendant contend that plaintiff's claim is barred by the statute of limitations in wrongful death actions which requires such action be commenced within three years from the date of death. Mass.Gen.L. ch. 229, § 2.[4] The Supreme Judicial Court has held, subsequent to the commencement of this case, that the statute of limitations discovery rule which tolls the statute of limitations until a plaintiff knows, or reasonably should know of his cause of action, does not apply in wrongful death cases. *Pobieglo v. Monsanto Co.*, 402 Mass. 112, 117, 521 N.E.2d 728 (1988).

Plaintiff is left one avenue by which her claim may survive summary judgment. It is an established principle of common law that fraudulent concealment or misrepresentation by the defendant or his agents which prevents an injured party from learning of the existence of a cause of action will toll the statute of limitations until the person entitled to bring suit discovered or should have discovered the true facts. This rule is codified at Mass.Gen.L. ch. 260, § 12, which provides:

> If a person liable to a personal action fraudulently conceals the cause of action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

This statute applies in wrongful death cases. *See Jenkins v. Jenkins*, 15 Mass. App. 934, 935, 444 N.E.2d 1301 (1983). Therefore, in order for plaintiff's claim to survive summary judgment she must come forward with admissible evidence tending to show that the defendants or their agents fraudulently concealed the facts upon which her cause of action rests.

Under Massachusetts law, the general rule is that fraudulent concealment cannot be presumed. Mere silence concerning the cause of action or failure to inform the plaintiff of facts upon which her cause of action rests is not fraudulent concealment within the meaning of the statute. *Maloney v. Brackett*, 275 Mass. 479, 484, 176 N.E. 604 (1931). The fraudulent concealment referred to in Mass.Gen.L. ch. 260, § 12, must be actually accomplished by positive acts done with intention to deceive. *Malapanis v. Shirazi*, 21 Mass.App. 378, 386, n. 8, 487 N.E.2d 533 (1986) (quoting *Maloney*, 275 Mass. at 484, 176 N.E. 604); *see also Frank Cooke, Inc. v. Hurwitz*, 10 Mass.App. 99, 106–108, 406 N.E.2d 678 (1980) (defendant must conceal the existence of cause of action through some affirmative act done with intent to deceive to toll statute of limitation) (citing *Stetson v. French*, 321 Mass. 195, 198, 72 N.E.2d 410 (1947)).

Massachusetts courts, however, have held that where there is a fiduciary relationship the mere failure to reveal the facts which form the basis of the cause of action may be fraudulent and toll the statute of limitations. *See Stetson v. French*, 321 Mass. at 198–199, 72 N.E.2d 410; *Jenkins*, 15 Mass.App. at 935, 444 N.E.2d 1301.

Plaintiff alleges that the defendants took affirmative steps with the intent to fraudulently conceal the cause of Mr. Hamlett's death through the misrepresentations of their agents, servants or employees. In the alternative, plaintiff argues that a physician-patient relationship is fiduciary in nature and imposes an affirmative duty upon physicians to reveal facts that may form the basis of a cause of action for medical malpractice. Therefore plaintiff contends that the defendants' silence constitutes fraudulent concealment under Mass.Gen.L.

---

**3.** The allegation is that the defendants negligently placed an endotracheal tube in his esophagus during routine surgery to remove a tumor from his chest.

**4.** Mass.Gen.L. ch. 229, § 2, provides in pertinent part:

An action to recover damages under this section shall be commenced within three years from the date of death or within such time thereafter as provided by section four, four B, nine or ten of chapter two hundred and sixty.

ch. 260, § 12, thus tolling the three-year statute of limitation for wrongful death claims under Mass.Gen.L. ch. 229, § 2. These arguments are discussed in turn.

■ Dr. S. Frank Fox, the Hamletts' family physician and the surgeon who operated on Mr. Hamlett, visited the Hamletts' home on the afternoon of the decedent's death. Plaintiff comes forth with evidence tending to prove that Doctor Fox told Mrs. Hamlett that after he made an incision Mr. Hamlett's cancer exploded causing his heart to stop. Doctor Fox allegedly said that these things sometimes happen, and that the operating team had worked to save Mr. Hamlett, but they could do nothing. Doctor Fox did not mention the alleged misplaced endotracheal tube. Plaintiff argues that Doctor Fox's alleged fraudulent concealment of the cause of death should be imputed to defendants for two reasons. First, plaintiff contends through the affidavit of Glorya Bourassa,[5] who worked in the Medical Records office of Hale Hospital where the surgery was performed, that the decedent's medical records were locked up separately and a flurry of activity accompanied their arrival. Second, plaintiff contends that the Court should infer that the surgical team discussed the cause of death and engaged in a joint venture to conceal the true facts.

Glorya Bourassa by affidavit testifies that the manner in which the decedent's medical records were handled on the day of his death indicated to her that something had gone wrong during the operation. The affidavit also states that Doctor Fox came down to the Medical Records Department on the day of the death and later the same day Doctor LaFortune also came down to the Medical Records Department along with the head of anesthesiology, Dr. Fred Nahill. Although this testimony might be relevant to the issue of negligence, it is not probative of whether the defendants authorized or even knew or should have known that Doctor Fox misrepresented the cause of Mr. Hamlett's death to Mrs. Hamlett.

In order for Doctor Fox's out-of-court statements to Mrs. Hamlett to be relevant to the issue of defendants' alleged fraudulent concealment of the cause of action, plaintiff must establish that the defendants authorized Doctor Fox's statements. Defendants have failed to come forward with evidence on this point. Even assuming there were evidence from which a reasonable jury could find that the defendants knew of Doctor Fox's statements to the decedent's family, these statements would be inadmissible as hearsay unless the plaintiff established under Fed.R.Evid. 801(d)(2)(C) or (D) that Doctor Fox was either authorized by defendants to make the statements or that he was their agent or servant and made such statements in the scope of this relationship. The uncontroverted evidence, however, from the affidavits of Doctor Fox, Doctor LaFortune and Nurse Gleasure is that neither of the defendants knew or authorized Doctor Fox to speak on their behalf. The alleged misrepresentations of Doctor Fox are not imputed to the defendants. Therefore, the Court holds that there exists no evidence in this record from which a reasonable jury could find that the defendants took *affirmative* steps with the intent to fraudulently conceal the cause of Mr. Hamlett's death.

■ As noted above, if the fiduciary nature of the relationship charges the fiduciary with a duty to disclose his wrong to the plaintiff and he fails to disclose, the statute of limitations will be tolled. Therefore, the final issue to be addressed is whether the physician-patient relationship is such a fiduciary one that a doctor's silence as to the cause of his patient's injury constitutes fraudulent concealment, thereby tolling the applicable statute of limitations. The Massachusetts courts have never directly addressed this issue. This Court sitting in diversity must look for other indications of state law.

The Supreme Judicial Court has recognized that the doctor-patient relationship has fiduciary aspects. *See Warsofsky v. Sherman*, 326 Mass. 290, 292, 93 N.E.2d 612 (1950). The Supreme Judicial Court has also held that a physician has a duty of

---

**5.** Glorya Bourassa is the plaintiff's mother-in-law.

full disclosure under the doctrine of informed consent to inform a patient of material risks and alternatives to a chosen course of treatment. *See Harnish v. Children's Hosp. Medical Center*, 387 Mass. 152, 439 N.E.2d 240 (1982). The relationship between a physician and his patient is one of trust and confidence. *See Lynch v. Waters*, 256 Ga. 389, 349 S.E.2d 456 (1986).

In *Maloney v. Brackett, supra*, the plaintiff alleged that her two physicians were negligent in recommending and performing an unnecessary, unwise and impractical operation. Plaintiff filed a medical malpractice claim more than five years after her cause of action accrued. The applicable statute of limitations for the tort of medical malpractice was two years. The plaintiff argued that the two-year statute of limitations should be tolled because plaintiff's doctors fraudulently concealed from her knowledge of the cause of action. The Supreme Judicial Court in addressing this argument stated that in order to toll the statute of limitations under Mass. Gen.L. ch. 260, § 12 the fraud must be accomplished by positive acts done with an intention to deceive unless the defendant is charged with a duty to disclose his wrong to the plaintiff. *Maloney*, 275 Mass. at 484, 176 N.E. 604. ("Ordinarily mere silence concerning the cause of action or failure to inform the plaintiff of facts upon which cause of action rests is not fraudulent concealment ...."). The court then ruled:

> But the failure of a doctor to disclose a cause of action to a patient could not be found to be a breach of his professional *duty* without evidence that he knew or believed that a cause of action existed, and we discover no evidence that either defendant knew or believed that he had performed ... an unnecessary operation, and none of such a violation of *professional duty* or concealment of facts as could establish a fraudulent concealment

of the cause of action within the meaning of the statute.

*Id.* (emphasis added).

The implication from the ruling in *Maloney* is that, if evidence had been presented tending to prove that the defendants did not believe in good faith that the plaintiff's operation was advisable, the court would have ruled differently. It is this Court's judgment that Massachusetts courts, if presented with this issue, would rule that, if a doctor knows or believes that a cause of action exists and fails to disclose it to the plaintiff, he will have breached his fiduciary relationship and violated his professional duty thus tolling the statute of limitations. This position is supported by the Massachusetts Appeals Court's decision in *Salinsky v. Perma–Home Corp.*, 15 Mass. App. 193, 443 N.E.2d 1362 (1983).

In *Salinsky* the court ruled that no fiduciary relationship existed between the seller of aluminum siding and the plaintiff which would have given rise to a duty to disclose a cause of action. *Id.* at 197, 443 N.E.2d 1362. The court compared the relationship between a buyer and a seller in a purely commercial transaction with other relationships:

> No fiduciary relationship between the seller and [the plaintiff] was shown. There was no family relationship, nor any basis of confidence and reliance (*see Stetson v. French*, 321 Mass. at 199 [72 N.E.2d 410]) or professional relationship (*cf. Maloney v. Brackett*, 275 Mass. 479, 482–484 [176 N.E. 604] (1931)), or continuing duty to disclose (*see Lynch v. Signal Fin. Co.*, 367 Mass. 503, 507–508 [327 N.E.2d 732] (1975)). This is also not a case of medical malpractice. *Franklin v. Albert*, 381 Mass. 611, 618–620 [411 N.E.2d 458] (1980) ...

The court in *Salinsky*, by comparing the facts of that case with the holding in cases involving professional relationships and medical malpractice, suggested that in a medical malpractice case involving a professional relationship the court would find a fiduciary relationship giving rise to a duty to disclose.[6]

---

**6.** This Court's role sitting in diversity is not to choose the rule it would adopt for itself. Instead, the federal district court is bound by what

the highest state court in the relevant jurisdiction would rule, were the claim before that tribunal. I am not absolutely certain that the

**48**

The final issue before the Court is whether a nurse's silence as to the cause of a patient's injury constitutes fraudulent concealment under Mass.Gen.L. ch. 260, § 12. Although nurses are charged with responsibilities and obligations crucial to the delivery of adequate health care, the Court is aware of no authority which imposes a duty upon a nurse to disclose information to a patient. Indeed, the dissemination of information from a nurse to a patient without the direction of a treating physician should not be encouraged. The court rules that a nurse is not charged with the same fiduciary responsibilities as a physician. The plaintiff has failed to offer admissible evidence tending to show affirmative acts by the defendant Gleasure to fraudulently conceal the plaintiff's cause of action. Therefore, the plaintiff's cause of action against the defendant Gleasure is barred by the statute of limitations. Defendant Gleasure's motion for summary judgment is hereby GRANTED.

The statute of limitations has not run on the plaintiff's claim against the defendant Doctor LaFortune. The plaintiff has come forward with admissible evidence tending to show that LaFortune may have been negligent in administering anesthesia to the decedent thus creating a genuine issue of material fact to be resolved at trial. Therefore, defendant LaFortune's motion for summary judgment is hereby DENIED.

SO ORDERED.

Supreme Judicial Court would draw the same implications from the language of *Maloney* as I have and it is with reluctance that I attempt to prophesy what ruling the state's highest court would make, but I am required to do so.